1

2

3                                                             O

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   ROBIN BERKOFF, et al.,    )    Case No. EDCV 10-00969
                               )    VAP(OPx)
12              Plaintiff,     )
                               )    **ORDER GRANTING MOTIONS TO**
13        v.                   )    **DISMISS**
                               )
14   MASAI USA CORP. D/B/A     )    **[Motions filed on Nov. 15,**
     MBT MASAI USA CORP.,      )    **2010 & Jan. 10, 2011]**
15   MASAI MARKETING &         )
     TRADING AG, AND DOES 1-   )
16   100, INCLUSIVE,           )
                               )
17              Defendants.
     _____

18

19

20        The Court has received and considered all papers

21   filed in support of, and in opposition to, Defendant

22   Masai USA Corporation's ("Masai USA") Motion to Dismiss

23   ("Motion") and Defendant Masai Marketing & Trading AG's

24   ("MMT") Motion to Dismiss ("MMT Motion") (collectively,

25   "Motions").[1]  (Doc. Nos. 18, 26.)  In the Motion,

26   _____

27        [1] As explained in the Procedural History, MMT filed
     its motion separately but joined Masai USA's Motion "in
28   its entirety."  (MMT Mot. at 1.)  The Court therefore
     refers only to Masai USA's Motion as "Defendants'
     Motion."

1  Defendants seek to dismiss the Second Amended Complaint
2  ("SAC") filed by Plaintiff Robin Berkoff ("Plaintiff"),
3  on behalf of herself, and all others similarly situated
4  (the "putative class"), on October 22, 2010.  (Doc. No.
5  15.)  This matter came before the Court for a hearing on
6  February 28, 2011, at which Defendants appeared but
7  Plaintiff did not make an appearance.  For the following
8  reasons, the Court GRANTS Defendants' Motions.
9
10                      **I.  BACKGROUND**
11 **A.   Plaintiff's Factual Allegations**
12      Defendants manufacture, market, and sell a line of
13 men's and women's shoes under the brand name MBT.  (SAC ¶
14 5.)  Defendants make a number of false and misleading
15 claims regarding the supposed health benefits of their
16 MBT shoes in a national advertising campaign.  (See
17 generally id. ¶¶ 21-62.)  In their online and print
18 advertisements, Defendants present MBT shoes as
19 protecting their wearers from health risks that
20 conventional shoes do not.  (See, e.g., id. ¶ 47.)  Many
21 of these advertisements cite to clinical studies that do
22 not, in fact, support Defendants' claims regarding MBT
23 shoes.  (See, e.g., id. ¶ 57.)  Defendants target
24 "physiologically healthy" consumers in addition to
25 consumers with medical conditions, despite the fact that
26 healthy individuals are unlikely to receive any health
27 benefits through the use of MBT shoes.  (Id. ¶ 44.)  As a
28

result of their advertising campaign, Defendants have
succeeded in selling MBT shoes at "exorbitant" prices.
(Id. ¶ 61.)

Plaintiff, a registered nurse, was introduced to the
MBT brand through a colleague, who told Plaintiff that
the shoes "were supposed to help people get in shape
while simply going about their normal daily routine
without any additional physical effort or activity."
(Id. ¶ 63.)  On May 3, 2009, Plaintiff went to a store
called "The Walking Company" located at "the Gardens at
El Paseo" shopping center in Palm Desert, California.
(Id. ¶ 64.)  At The Walking Company, Plaintiff "inquired
about MBT footwear to a salesperson" and was "given
point-of-sale literature about MBT footwear in the form
of a brochure or pamphlet."  (Id. ¶ 65.)

In the pamphlet about MBT footwear, Plaintiff read
that "MBT shoes would, among other things, improve her
circulation, improve her posture, tone the muscles in her
legs, abs and glutes [sic], reduce joint pain, and reduce
stress on her back and joints."  (SAC ¶ 66.)  A sales
person at The Walking Company "reiterated the promised
physiological benefits" to Plaintiff.  (Id.)  Based upon
these promised benefits, Plaintiff purchased a pair of
MBT Kisumu Sandals for $255.51, including tax.  (Id. ¶
67.)

3

1     Plaintiff wore her MBT shoes regularly for five to
2 six months, but found that even with "regular and
3 continuous use," she "did not realize any of the
4 physiological benefits" which had been advertised.  (SAC
5 ¶ 68.)  She also found that she "began to feel a numbness
6 in her Achilles tendons."  (Id.)

7

8 **B.   Procedural History**

9     Plaintiff filed the putative class action complaint
10 ("Complaint") against Defendants on July 1, 2010.  (Doc.
11 No. 1.)  She filed the first amended complaint ("FAC") on
12 September 17, 2010, and filed the SAC on October 22,
13 2010.  (Doc. Nos. 7, 15.)

14

15     Plaintiff's first claim is for deceptive advertising
16 in violation of the California's Unfair Competition Law
17 ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.  (SAC ¶¶
18 79-90.)  Plaintiff asserts that Defendants' actions
19 constitute "unlawful" business practices because they
20 violate California's Sherman Food, Drug, and Cosmetic Law
21 ("Sherman Act"), Cal. Health & Safety Code §§ 109875-
22 111915, specifically the portions of the law regarding
23 advertising of medical devices.  (Id. ¶¶ 81-83.)
24 Plaintiff asserts that Defendants' actions constitute
25 "unfair" business practices because their conduct "is
26 substantially injurious to consumers; violates public
27 policy; is immoral, unethical, oppressive, and

28

unscrupulous; and the utility of such conduct is
substantially outweighed by the gravity of the harm to
its victims." (Id. ¶ 86.)  Plaintiff also asserts that
Defendants' actions are "fraudulent." (Id. ¶ 87.)

Plaintiff's second claim seeks relief for violation
of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ.
Code § 1750, et seq. (SAC ¶¶ 91-98.)  Plaintiff asserts
that Defendants "[r]epresented that goods or services
have characteristics, ingredients, uses, benefits, or
quantities which they do not have; and . . . are of a
particular standard, quality, or grade, when they are of
another . . . ." (SAC ¶ 94.)

Plaintiff seeks to bring a class action on behalf of
"[a]ll persons who purchased MBT Footwear in
California[,]" excluding Defendants' officers, directors,
and employees, and anyone who purchased MBT shoes for the
purpose of resale. (SAC ¶ 70.)

Plaintiff served the Complaint on Masai USA at its
California office on July 13, 2010. (Doc. No. 6.)
Plaintiff served the Complaint on MMT at its Switzerland
office on September 20, 2010, in accordance with the
procedure for international service of process under the
Hague Service Convention. (Doc. No. 22.)  On November
15, 2010, Masai USA filed its Motion on its own behalf,

asserting that MMT had not yet been served with the
operative complaint.  (Doc. No. 18.)   Following an order
from the Court on the stipulation by all parties, MMT
accepted service of the SAC through its counsel.

     On January 10, 2011, MMT filed its Motion to Dismiss,
joining Defendant Masai USA's Motion in its entirety.
(Doc. Nos. 26, 27.)   Plaintiff filed her Oppositions to
Defendants' Motions ("Opposition" and "Opposition to MMT
Motion") on January 25, 2010.   (Doc. Nos. 32, 33.)
Defendants filed a Joint Reply in Support of their
Motions ("Reply") on January 31, 2010.   (Doc. No. 34.)

     Defendants argue the Court should dismiss the SAC for
the following reasons: (1) Plaintiff fails to plead her
fraud claim with the specificity required under Federal
Rule of Civil Procedure ("Rule") 9(b); (2) Plaintiff
lacks standing to assert her claims under California and
federal law because she fails to allege she suffered an
injury caused by the Defendants; and (3) Plaintiff fails
to meet the strict notice requirement of the CLRA.  (Mot.
at 1.)   MMT also asserts that Plaintiff failed to give it
proper notice under the CLRA before filing this action
for damages.  (MMT Mot. at 2.)

1                          **II. LEGAL STANDARD**

2    **A.   Motion to Dismiss**

3         Rule 12(b)(6) allows a party to bring a motion to

4    dismiss for failure to state a claim upon which relief

5    can be granted.  As a general matter, the Federal Rules

6    require only that a plaintiff provide "'a short and plain

7    statement of the claim' that will give the defendant fair

8    notice of what the plaintiff's claim is and the grounds

9    upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47

10   (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp.

11   v. Twombly, 550 U.S. 544, 555 (2007).  In addition, the

12   Court must accept all material allegations in the

13   complaint – as well as any reasonable inferences to be

14   drawn from them – as true.  See Doe v. United States, 419

15   F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S.

16   Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005).

17

18         "While a complaint attacked by a Rule 12(b)(6)

19   motion to dismiss does not need detailed factual

20   allegations, a plaintiff's obligation to provide the

21   'grounds' of his 'entitlement to relief' requires more

22   than labels and conclusions, and a formulaic recitation

23   of the elements of a cause of action will not do."

24   Twombly, 550 U.S. at 555 (citations omitted).  Rather,

25   the allegations in the complaint "must be enough to raise

26   a right to relief above the speculative level."  Id.

27

28

                                  7

In other words, the allegations must be plausible on the face of the complaint.  See Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (citations and internal quotations omitted).

If a Court concludes dismissal is appropriate, leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  The Ninth Circuit has held that "'[t]his policy is to be applied with extreme liberality.'"  Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).  Leave to amend should only be denied on a showing of bad faith, undue delay, prejudice to the opposing party, or futility of the amendment.  Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009, 1016 (9th Cir. 1999).

1                    **III. DISCUSSION**

2 **A.   Standing Under Article III**

3      As an initial matter, Plaintiff must demonstrate she

4 has standing to bring this suit.  Article III of the

5 Constitution gives federal courts jurisdiction over

6 "cases and controversies."  U.S. Const. Art. III, § 2,

7 cl. 2.  "In essence the question of standing is whether

8 the litigant is entitled to have the court decide the

9 merits of the dispute or of particular issues."  <u>Warth v.</u>

10 <u>Seldin</u>, 422 U.S. 490, 498 (1975).  Standing, therefore,

11 is a threshold issue in every federal case.  <u>Elk Grove</u>

12 <u>Unified Sch. Dist. v. Newdow</u>, 524 U.S. 1, 11 (2004) ("In

13 every federal case, the party bringing the suit must

14 establish standing to prosecute the action."); <u>Warth</u>, 422

15 U.S. at 517-18; <u>McMichael v. County of Napa</u>, 709 F.2d

16 1268, 1269 (9th Cir. 1983) (citing <u>Linda R.S. v. Richard</u>

17 <u>D.</u>, 410 U.S. 614, 616 (1973)) ("Before the judicial

18 process may be invoked, a plaintiff must 'show that the

19 facts alleged present the court with a 'case or

20 controversy' in the constitutional sense and that she is

21 a proper plaintiff to raise the issues sought to be

22 litigated.'").

23

24      To satisfy the "case or controversy" requirement, a

25 plaintiff "must demonstrate that he has suffered an

26 'injury in fact'" that a favorable judgment will redress.

27 <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990); <u>Newdow</u>,

28

1   542 U.S. at 12 (citing <u>Lujan v. Defenders of Wildlife</u>,
2   504 U.S. 555, 560-561 (1992)).  In other words, a
3   plaintiff must demonstrate: (1) he has suffered an
4   "'injury in fact' -- an invasion of a legally protected
5   interest which is (a) concrete and particularized, and
6   (b) actual or imminent, not conjectural or hypothetical";
7   (2) there is a causal connection between the injury and
8   the conduct complained of -- that is, the injury is
9   "fairly traceable" to the challenged action of the
10  defendant, and not the result of the independent action
11  of some third party not before the court; and (3) it is
12  "likely," as opposed to merely "speculative," that the
13  injury will be redressed by a favorable judicial
14  decision.  <u>Lujan</u>, 504 U.S. at 560-61 (footnote,
15  citations, and quotation marks omitted).
16
17      The party invoking federal jurisdiction bears the
18  burden of establishing the elements of standing.  <u>Lujan</u>,
19  504 U.S. at 561 (citing <u>FW/PBS, Inc. v. Dallas</u>, 493 U.S.
20  215, 231 (1990)); <u>Warth</u>, 422 U.S. at 508.  "At the
21  pleading stage, general factual allegations of injury
22  resulting from the defendant's conduct may suffice . . .
23  ."  <u>Lujan</u>, 504 U.S. at 561 (citing <u>Lujan v. Nat'l</u>
24  <u>Wildlife Fed'n</u>, 497 U.S. 871, 889 (1990)).
25
26
27
28

1    Plaintiff must satisfy Article III standing
2  requirements to assert each of her claims in federal
3  court.  As Plaintiff's claims are founded upon the same
4  alleged injuries, the Court's analysis applies to all of
5  them.  The Court finds that Plaintiff does not establish
6  standing here because she has not adequately alleged that
7  she suffered an injury, and that her injury was caused by
8  Defendants' actions.

9

10    **i.  Injury in Fact**

11    Defendants first assert that Plaintiff has failed to
12 demonstrate she suffered an injury-in-fact as a result of
13 Defendants' actions.  (Mot. at 10-11.)  To satisfy the
14 injury-in-fact requirement, "[t]he plaintiff must show
15 that [s]he has sustained or is immediately in danger of
16 sustaining some direct injury as a result of the
17 [defendant's] conduct and the injury or threat of injury
18 must be both real and immediate, not conjectural or
19 hypothetical."  City of Los Angeles v. Lyons, 461 U.S.
20 95, 101-02 (1983) (citations omitted); Lujan, 504 U.S. at
21 560 ("[By injury in fact we mean] an invasion of a
22 legally protected interest which is (a) concrete and
23 particularized, . . . and (b) actual or imminent, not
24 'conjectural' or 'hypothetical'.").

25

26

27

28

11

1  Plaintiff argues her stated injury consists of
2  physical injury and loss of money on the purchase of a
3  pair of defective shoes.  (Opp'n at 6.)  Plaintiff cites
4  no authority to support her argument that these injuries
5  qualify as an "invasion of a legally protected interest"
6  sufficient to grant her standing to sue.  As Plaintiff
7  bears the burden of demonstrating standing, the Court
8  finds that Plaintiff fails to demonstrate she has
9  suffered injury-in-fact.

10

11  **ii. Causation**

12  Defendants also assert that Plaintiff has not alleged
13  the requisite causal connection between Defendants'
14  actions and her resulting economic injury.  (Mot. at 10-
15  11.)  Plaintiff's injury must be "fairly traceable to the
16  challenged action of the defendant, and not the result of
17  the independent action of some third party not before the
18  court."  Lujan, 504 U.S. at 560.  "The line of causation
19  between the [alleged] illegal conduct and injury" must
20  not be "too attenuated."  Allen v. Wright, 468 U.S. 737,
21  752 (1984).

22

23  Plaintiff alleges generally that she purchased her
24  shoes "in reliance on the false and misleading claims of
25  [Defendants]."  (SAC ¶ 14.)  Plaintiff's specific
26  allegations, however, are that she purchased her shoes in
27  reliance upon information she read in a brochure and the

28

statements of a sales person at The Walking Store in Palm Desert.  (Id. ¶ 66.)  As will be discussed in greater detail below, Plaintiff has not adequately alleged a connection between Defendants' actions and the information she relied upon.  Accordingly, she fails to demonstrate the causation necessary to support standing under Article III.

### iii.    Redressability

The third element of standing, which Defendants do not challenge here, is that the plaintiff's injury will be "redressed by a favorable decision."  Lujan, 504 U.S. at 561 (internal quotations and citations omitted).  It is undisputed that the monetary damages Plaintiff seeks will redress her monetary injury, although she does not address how her alleged physical injury will be redressed.

Accordingly, the Court finds Plaintiff has not demonstrated she has standing under Article III of the Constitution to bring this action.

### B.    Standing under California Law

Defendants also assert Plaintiff fails to meet the requirements for standing under California law.  (Mot. at 8-10.)  In addition to general standing requirements, the UCL and CLRA have particularized standing requirements.

13

1  Plaintiff fails to meet these standing requirements as
2  well.

3

4      **i.   Standing Under the UCL**

5      The UCL provides a private right of action to a
6  plaintiff who has "suffered injury in fact and has lost
7  money or property as a result of the unfair competition."
8  Cal. Bus. & Prof. Code § 17204 (West 2011); <u>see also</u>
9  <u>Birdsong v. Apple, Inc.</u>, 590 F.3d 955, 959 (9th Cir.
10 2009).

11

12     The Supreme Court of California recently addressed
13 the issue of standing under the UCL in light of
14 Proposition 64.  <u>See</u> <u>Kwikset Corp. v. Superior Court</u>, 51
15 Cal. 4th 310, 2011 WL 240278, *6 (2011).  The <u>Kwikset</u>
16 court held that "the quantum of lost money or property
17 necessary to show standing is only so much as would
18 suffice to establish injury in fact."  <u>Id.</u> at *7.  The
19 injury requirement of UCL is thus equivalent to the
20 federal constitutional injury requirement, and Plaintiff
21 has failed to meet that standard here.  <u>See</u> <u>Birdsong</u>, 590
22 F.3d at 960 (finding plaintiffs did not have standing
23 under UCL where they did not allege any actual injury).

24

25     The UCL likewise requires a showing of causation,
26 whereby a plaintiff must demonstrate that her economic
27 injury came "as a result of" the defendant's violation.

28

1   <u>Kwikset</u>, 2011 WL 240278 at *6.  The Court finds, for the
2   reasons set forth above, that Plaintiff fails to
3   demonstrate Defendants' actions caused her alleged
4   injury.  Accordingly, the Court finds Plaintiff has not
5   alleged she has standing under the UCL.

7   **ii. Standing Under the CLRA**

8       Under the CLRA, a plaintiff must allege she has
9   suffered damages "as a result of the use or employment"
10  of a proscribed method, act, or practice.  <u>See, e.g.</u>,
11  <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1366
12  (2010); Cal. Civ. Code § 1780(a) (West 2011).  A
13  plaintiff thus must show "not only that a defendant's
14  conduct was deceptive, but that the deception caused them
15  harm."  <u>Durell</u>, 183 Cal. App. 4th at 1367; <u>see also</u> <u>In re</u>
16  <u>Actimmune Marketing Litigation</u> (<u>Actimmune II</u>), No. C
17  08-02376 MHP, 2009 WL 3740648, at *16 (N.D. Cal. Nov. 6,
18  2009) ("In comparison to the UCL and FAL, the CLRA has a
19  more stringent standing requirement, in that a class
20  representative must show actual causation and
21  reliance.").  Because Plaintiff fails to demonstrate
22  Defendants' actions caused her injury, she fails to
23  demonstrate she has standing under the CLRA.

15

**C.   Plaintiff's Second Amended Complaint Does Not Allege A Factual Basis for Her Claims With Sufficient Specificity**

Defendants next argue that Plaintiff fails to plead essential facts of her transaction with the particularity required by Rule 9(b).  (Mot. at 5-8.)  Allegations of fraud must meet the heightened pleading requirements of Rule 9(b), which applies when a complaint specifically alleges fraud as an essential element of a claim.  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1126-27 (9th Cir. 2009); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003); Fed. R. Civ. P. 9(b).  Claims under the UCL and the CLRA are subject to the requirements of Rule 9(b).  Kearns, 567 F.3d at 1125.

To satisfy the requirements of Rule 9(b), "[a] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false." Vess, 317 F.3d at 1106 (quotation omitted, emphasis in original).  Such allegations "must be accompanied by the who, what, when, where, and how of the misconduct charged." Id. (quotation omitted).  Specifically, the allegation must include "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."

16

Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007)
(quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066
(9th Cir. 2004)).

     The purposes of Rule 9(b) are to give potential
defendants adequate notice of the exact nature of charges
against them, to protect the reputation of those who
would be harmed by a fraud charge, and to prohibit
plaintiffs from unilaterally imposing upon the court, the
parties, and society enormous social and economic costs
absent some factual basis.  See Kearns, 567 F.3d at 1124.

     Here, Plaintiff makes general allegations about
Defendants' national advertising campaign in print and
online media, and she asserts that she purchased her
shoes "in reliance on the false and misleading claims" of
Defendants' advertisements.  (SAC ¶ 14.)  Plaintiff's
specific allegations, however, are that she relied upon
two things when purchasing her MBT shoes: (1) a brochure
about MBT shoes she received at the store where she
purchased her shoes; and (2) statements made by one sales
person at that store.  (SAC ¶¶ 66-67.)  She alleges she
was injured because she "did not realize any of the
physiological benefits promised" by the MBT
advertisement, and that instead she experienced numbness
in her Achilles tendons.  (SAC ¶ 68.)  These allegations,

17

1  without more, do not meet the heightened pleading
2  standard of Rule 9(b).

3

4       First, Plaintiff does not allege she ever saw any of
5  Defendants' print or online advertisements, or that she
6  relied upon the claims made in those advertisements when
7  she purchased her shoes.  See Kearns, 567 F.3d at 1126
8  ("Nor did Kearns specify when he was exposed to [the
9  television advertisements and other sales material] or
10 which ones he found material."); see also In re Actimmune
11 Marketing Litigation (Actimmune I), 614 F. Supp. 2d 1037,
12 1051 (N.D. Cal. 2009) (finding plaintiffs' pleadings
13 inadequate under the heightened pleading standard of RICO
14 where plaintiffs "spend pages recapitulating defendants'
15 efforts to engage in sales and marketing programs to
16 increase the sales" but where "allegations relating to
17 the causal chain of injury as a result of these marketing
18 efforts . . . is scanty."); Actimmune II, 2009 WL
19 3740648, at *14 (finding plaintiffs' pleadings failed to
20 state a claim under UCL's fraudulent prong where they
21 failed to allege they relied upon defendant's
22 advertisements in purchasing the product); Goldsmith v.
23 Allergan, Inc., No. CV 09-7088 PSG (Ex), 2011 WL 147714,
24 at *5 (C.D. Cal. Jan. 13, 2011) (finding plaintiff did
25 not plead fraud claim under UCL with adequate specificity
26 where he "never allege[d] that he saw any ads and relied
27 on them" in purchasing defendants' product).

28

1    In addition, regarding the "who" prong of the test,
2    Plaintiff has not adequately alleged the connection
3    between any Defendant, on the one hand, and the
4    informational brochure and The Walking Store sales person
5    who provided her with the information she relied upon, on
6    the other.  She does not allege any connection between
7    Defendants and the brochure, which could have been
8    created independently by The Walking Store.  Plaintiff
9    does allege when and where she heard and read the
10   statements she relied upon in purchasing her shoes.

11

12   Plaintiff's claim also fails under Rule 9(b) on the
13   "how" factor.  All of Plaintiff's allegations regarding
14   her experience with her MBT shoes is that she "did not
15   realize any of the physiological benefits promised . . .
16   [and] began to feel a numbness in her Achilles tendons."
17   (SAC ¶ 68.)  Plaintiff does not state whether she noticed
18   any effect from her MBT shoes for the first four months
19   she wore them, nor does she indicate whether she had any
20   of the initial ailments the MBT brochure claimed it would
21   help and how they were specifically affected.  As such,
22   Plaintiff's allegations are insufficient to state a fraud
23   claim under Rule 9(b).  See, e.g., Kearns, 567 F.3d at
24   1126 (affirming dismissal of plaintiff's complaint
25   because he "failed to plead his averments of fraud with
26   particularity"); cf. Lima v. Gateway, Inc., 710 F. Supp.
27   2d 1000, 1007 (C.D. Cal. 2010) (finding fraud claim
28

19

adequately specific where plaintiff alleged computer monitor could not achieve advertised degree of resolution without purchase of additional accessories).

In the ninety-eight paragraph SAC, Plaintiff spends only seven paragraphs alleging how she personally was injured by Defendants' alleged misconduct.  The Court finds that Plaintiff's short description of her alleged injuries has not met the heightened pleading standard of Rule 9(b) required to plead a claim for fraud.

**D.  Defendants' Statements Were Non-Actionable Puffery**

In addition, Plaintiff has failed to demonstrate that Defendants' advertisements should be considered actionable misrepresentation rather than "puffery."  "A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance.  Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1053 (9th Cir. 2008) (citing Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990)).  A specific, quantifiable statement may be actionable while a general, subjective claim about a product is non-actionable puffery.  Newcal Indus., 515 F.3d at 1053.

1    Here, Defendants' alleged claims about MBT shoes are
2    too general and subjective to be actionable.  Plaintiff
3    alleges she read that MBT shoes would improve her
4    circulation and posture, tone her muscles, and reduce
5    stress on her back and joints.  (SAC ¶ 66.)  These
6    claims, rather than providing specific benchmarks MBT
7    shoes promise to meet, are more akin to general
8    promotional statements.  See, e.g., Forsyth v. Humana,
9    Inc., 114 F.3d 1467, 1481 (9th Cir. 1997) (finding
10   statements that defendant could "control costs" was
11   puffery because statements were too general to be
12   interpreted as defining any calculations); In re Epogen
13   and Aranesp Off-Label Marketing and Sales Practices
14   Litig., No. MDL 08-1934 PSG (AGRx), 2009 WL 1703285, *6
15   (C.D. Cal. June 17, 2009) (finding defendant's actions of
16   "presenting its drugs in the best light possible" was not
17   actionable fraud).
18
19   The Court thus finds that the statements Plaintiff
20   relied upon in purchasing the shoes are puffery and not
21   actionable as fraud.  See Shroyer v. New Cingular
22   Wireless Servs., Inc., 622 F.3d 1035, 1043 (9th Cir.
23   2010) (citing Glen Holly Entm't, Inc. v. Tektronix, Inc.,
24   343 F.3d 1000, 1015 (9th Cir. 2003)) (affirming dismissal
25   of fraud claim as puffery where defendant company's
26   advertisement was a "vague statement" containing no
27   concrete assertions); Cook, Perkiss and Liehe, 911 F.2d
28

21

242, 246 (9th Cir. 1990) (finding defendants' statements were "general assertions of superiority rather than factual misrepresentations" and thus were not actionable as fraud).

**E.   Plaintiff Complied With the Notice Requirement of Cal. Civ. Code § 1782**

Defendants also argues that the SAC should be dismissed because Plaintiff failed to comply with the notice requirements of the CLRA.  (Mot. at 12-13; MMT Mot. at 3 (citing Cal. Civ. Code § 1782 (West 2011)).) Plaintiff asserts she sought only injunctive relief in her original Complaint and did not seek damages until after she had notified Defendants of her CLRA claims. (Opp'n at 8-9.)

"Thirty days or more prior to the commencement of an action for damages" under the CLRA, a plaintiff must notify the defendant in writing of the allegations and make a demand for correction.  Cal. Civ. Code § 1782(a) (West 2011).  A plaintiff may, however, bring an action for injunctive relief before compliance with the notice requirement and amend the pleading after compliance.  Id. § 1782(d).  The notice provisions of section 1782 are interpreted strictly by courts.  See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Products Liability Litig., __ F. Supp. 2d __, 2010 WL

1   4867562, *20 (C.D. Cal. Nov. 30, 2010) (citing Outboard
2   Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 41
3   (1975)).

4

5        Plaintiff's original Complaint requested only
6   injunctive relief under the CLRA.  (Compl. at 26.)  On
7   July 1, 2010, Plaintiff sent notice letters to Defendants
8   complying with the requirements of section 1782.  (FAC ¶
9   91; Opp'n at 9; Opp'n to MMT Mot. at 2.)  MMT argues that
10  it never received the required notice from Plaintiff.
11  (MMT Mot. at 3.)  The language of the statute requires
12  written notice be sent "to the place where the
13  transaction occurred or to the person's principal place
14  of business within California."  Civ. § 1782(a)(2).  As
15  the Court is dismissing Plaintiff's SAC, it need not
16  decide now whether Plaintiff's notice to MMT satisfied
17  the notice requirements of section 1782.

18

19                    **IV. CONCLUSION**
20       For the foregoing reasons, the Court GRANTS
21  Defendants' Motions to Dismiss Plaintiff's Second Amended
22  Complaint with leave to amend.  Plaintiff may file an
23  amended complaint no later than March 22, 2011.  Absent a
24  stipulation from the parties regarding a date for the

25

26

27

28

23

1  class certification motion, Plaintiff must file a class
2  certification motion by May 2, 2011.
3
4
5  Dated:  __March 3, 2011__          _____
6                                     VIRGINIA A. PHILLIPS
                                       United States District Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28